# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 06-00932 |
| | ) | |
| GLAZED INVESTMENTS, LLC, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Hon. Pamela S. Hollis |
| | ) | |

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER CONFIRMING DEBTOR'S AMENDED LIQUIDATING PLAN OF REORGANIZATION PURSUANT TO CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE DATED MAY 8, 2006

Glazed Investments, LLC (the "Debtor") filed a voluntary petition for relief under chapter 11 of title 11 of the Untied States Code (the "Bankruptcy Code") on February 3, 2006 (the "Petition Date"); on April 12, 2006, the Debtor filed its liquidating plan of reorganization dated April 12, 2006 and its disclosure statement; on May 8, 2006, the Debtor filed the Debtor's Amended Liquidating Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code Dated May 8, 2006 (the "Plan")[1] and the Amended Disclosure Statement for the Debtor's Amended Liquidating Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code (the "Disclosure Statement"); the Bankruptcy Court approved the Disclosure Statement on May 9, 2006, and on May 12, 2006, the Debtor distributed the following materials (the "Solicitation Materials"): (a) the Plan, (b)

---

[1] Unless otherwise specified, capitalized terms and phrases used herein have the meanings assigned to them in the Plan. In accordance with section III.A of this Order, if there is any direct

the Disclosure Statement, (c) the appropriate ballots to accept or reject the Plan (including an accompanying letter to those holders of Class 4 Claims that received the special waiver Class 4 ballot), (d) the Notice of Confirmation Hearing, Objection Deadline and Voting Deadline, and (e) the Order (A) Approving Disclosure Statement, (B) Scheduling Hearing to Confirm Plan of Reorganization, (C) Establishing Objection Deadline, (D) Approving Form of Ballots, Voting Deadline and Solicitation Procedures, and (E) Approving Form of Notice, dated May 9, 2006 (the "Disclosure Statement Order"); the Certificate of Service with respect to the mailing of the Solicitation Materials and providing notice of the Confirmation Hearing to known creditors and parties in interest was filed with this Bankruptcy Court on June 6, 2006; the Affidavit of Balloting Agent Regarding Solicitation and Tabulation of Votes in Connection with Debtor's Amended Liquidating Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code Dated May 8, 2006 (the "Voting Affidavit") was filed with this Bankruptcy Court on June 8, 2006; this Bankruptcy Court scheduled June 13 at 10:30 a.m. as the date and time of the hearing, pursuant to Bankruptcy Rule 3018 and section 1126 and 1128 of the Bankruptcy Code, to consider confirmation of the Plan (the "Confirmation Hearing"); the Debtor having submitted the Voting Affidavit and the Affidavit of Joel Aaseby in Support of the Confirmation of the Debtor's Amended Liquidating Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code Dated May 8, 2006 (the "Aaseby Affidavit") in support of confirmation of the Plan; this Bankruptcy Court having reviewed the Plan and any objections to confirmation; this Bankruptcy Court having heard the statements of counsel in support of confirmation at the

---

conflict between the terms of the Plan and the terms of this Order, the terms of this Order shall

Confirmation Hearing and having considered all evidence submitted at the Confirmation Hearing; the Bankruptcy Court takes judicial notice of the papers and pleadings on file in the above-captioned chapter 11 case; and it appearing that (a) notice of the Confirmation Hearing and the opportunity of any creditor or interested party to object to confirmation of the Plan were adequate and appropriate, and (b) the legal and factual bases presented at the Confirmation Hearing establish just cause for the relief granted herein; this Bankruptcy Court hereby makes and issues the following findings of fact, conclusions of law and orders.[2]

## I.

## FINDINGS OF FACT

A.   Jurisdiction and Venue.

On the Petition Date, the Debtor commenced its chapter 11 case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor was and is qualified to be a debtor under section 109 of the Bankruptcy Code.  The Debtor's headquarters and principal place of business are and have been in Illinois for more than 180 days prior to the Petition Date.  Accordingly, pursuant to 28 U.S.C. § 1408, venue in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division for this chapter 11 case was proper as of the Petition Date and continues to be proper.

---

control.

[2] This Order constitutes this Court's findings of fact and conclusions of law under Fed.R.Civ.P. 52, as made applicable by Bankruptcy Rules 7052 and 9014.  Any and all findings of fact shall constitute findings of fact even if they are stated as conclusions of law, and any and all conclusions of law shall constitute conclusions of law even if they are stated as findings of fact.

B.    Compliance with the Requirements of Section 1129 of the Bankruptcy Code.

    1.    Section 1129(a)(1) – Compliance of the Plan with Applicable Provisions of the Bankruptcy Code

The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code, including, without limitation, sections 1122 and 1123. The Plan is dated and identifies the Debtor as the proponent thereof as required by Fed.R.Bankr.P. 3016(a).

    a.    **Section 1122 and 1123(a)(1)-(4) – Classification and Treatment of Claims and Interests.**

Pursuant to sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, Article II of the Plan designates Classes of Claims and Interests, other than Administrative Claims and Tax Claims.[3] As required by section 1122(a), each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other claims or Interests within that Class. The Plan designates seven Classes of Claims and Interests, designated as Class 1A, Class 1B, Class 1C and Classes 2 through 5. Such classification is reasonable and proper under section 1122(a) of the Bankruptcy Code because such Claims and Interests have differing rights among each other and against the Debtor's assets. Pursuant to sections 1123(a)(2) and (3) of the Bankruptcy Code, Article III of the Plan specifies all Classes of Claims and Interests that are not impaired under the Plan, and Article IV specifies the treatment of the Classes of Claims and Interests that are impaired under the Plan. The Plan identifies Classes 3 and 5 as unimpaired and Classes 1A, 1B, 1C, 2 and 4 as impaired.

---

[3] The Administrative Claims and the Tax Claims are not required to be designated pursuant to section 1123(a)(1) of the Bankruptcy Code. 11 U.S.C. § 1123(a)(1).

Pursuant to section 1123(a)(4) of the Bankruptcy Code, the Plan also provides the same treatment for each Claim or Interest within a particular Class.

      **b.**    **Section 1123(a)(5) – Adequate Means of Implementation of the Plan.**

Pursuant to section 1123(a)(5) of the Bankruptcy Code, Articles VI and VII and various other provisions of the Plan provide adequate means for the Plan's implementation. Those provisions relate to, among other things: (i) procedures for resolving Contested Claims, (ii) the distribution of Remaining Net Proceeds pursuant to the Plan; (iii) Krispy Kreme's agreement to advance funds to the Debtor to the extent estate assets are insufficient to make any payments to holders of Allowed Claims under the Plan; and (iv) the releases by the Debtor and the Debtor's estate.

      **c.**    **1123(a)(6) – Prohibition Against Issuance of Nonvoting Equity Securities.**

Section 1123(a)(6) is not applicable to this chapter 11 case because the Plan does not provide for, or contemplate, the issuance of any securities.

      **d.**    **1123(a)(7) – Selection of Directors and Officers Consistent with Interests of Stakeholders and Public Policy.**

Pursuant to section 1123(a)(7) of the Bankruptcy Code, the Plan provisions with respect to the continuation of any officer and director of the Debtor are consistent with the interests of creditors and equity security holders and with public policy.

      **e.**    **Section 1123(d)(1)-(2) – Impairment of Claims and Interests and Assumption and Assignment or Rejection of Executory Contracts and Unexpired Leases.**

In accordance with section 1123(b)(1) of the Bankruptcy Code, Articles III and IV of the Plan impair or leave unimpaired, as the case the may be, each Class of Claims

and Interests.  In accordance with section 1123(b)(2) of the Bankruptcy Code, Article VIII of

the Plan provides for the rejection of the Debtor's executory contracts and unexpired leases

of non-residential real property (the "Unexpired Leases") not previously assumed or rejected

pursuant to section 365 of the Bankruptcy Code and appropriate authorizing orders of the

Bankruptcy Court.

> **f.**   **Section 1123(b)(3) – Retention Enforcement and Settlement of Claims Held by Debtor.**

Sections 12.1 and 12.2 of the Plan provide that the Debtor will retain and may

enforce any claims, demands, rights and causes of action the Debtor or its estate may hold

against any entity, to the extent not released under the Plan and this Order.

> **g.**   **Section 1123(b)(5) – Modification of the Rights of Holders of Claims.**

Articles III and IV of the Plan modify or leave unaffected, as the case may be,

the rights of holders of each Class of Claims.

> **h.**   **Section 1123(b)(6) – Other Provisions Not Inconsistent with Applicable Provisions of the Bankruptcy Code.**

The Plan includes additional appropriate provisions that are not inconsistent

with applicable provisions of the Bankruptcy Code, including, but not limited to:  (i) the

provisions of Article IX establishing procedures for resolving Contested Claims; (iii) the

provisions of Article X of the Plan governing distributions on account of Allowed Claims;

and (iii) the provisions of Article XIV of the Plan regarding retention of jurisdiction by the

Bankruptcy Court over certain matters after the Effective Date.

> **i.**   **Section 1123(d) – Cure Defaults.**

Section 1123(d) of the Bankruptcy Code is not applicable to this chapter 11 case because the Plan does not provide for the assumption of any executory contracts or unexpired leases of non-residential real property.

2.    Section 1129(a)(2) – Compliance of the Debtor with Applicable Provisions of the Bankruptcy Code.

The Debtor, as proponent of the Plan, has complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(2) of the Bankruptcy Code, including section 1125 of the Bankruptcy Code and Bankruptcy Rules 3017 and 3018. The Disclosure Statement and the procedures by which the ballots for acceptance or rejection of the Plan were solicited and tabulated were fair, properly conducted and in accordance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018 and the Disclosure Statement Order.

3.    Section 1129(a)(3) – Proposal of Plan in Good Faith.

The Debtor proposed the Plan in good faith and not by any means forbidden by law. The Plan itself and the process leading to its formulation provide independent evidence of the Debtor's good faith. The Debtor, its Manager, members, owners, management, employees, agents, affiliates and professionals (acting in such capacity) have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code. In particular, none of the Debtor's Manager, members, owners, management or employees have engaged in willful or negligent misconduct with respect to the chapter 11 case or the Debtor, generally. Pursuant to Bankruptcy Rule 3020(b)(2), no evidence is necessary to demonstrate compliance with section 1129(a)(3).

4.    Section 1129(a)(4) – Bankruptcy Court Approval of Certain Payments as Reasonable.

Pursuant to section 1129(a)(4) of the Bankruptcy Code, any payment made or promised by the Debtor or by any person acquiring property under the Plan, for services or for costs and expenses in, or in connection with, this chapter 11 case, or in connection with the Plan and incident to this chapter 11 case, has been approved by, or is subject to the approval of, the Bankruptcy Court as reasonable.

5.    Section 1129 (a)(5) – Disclosure of Identity and Affiliations of Proposed Management, Compensation of Insiders and Consistency of Management Proposals with the Interests of Creditors and Public Policy.

To the extent section 1129(a)(5) applies to the Debtor, the Debtor has satisfied the requirements of this provision of the Bankruptcy Code by, among other things, disclosing that the post-Confirmation Debtor shall continue to be responsible for administering its estate.   Specifically, Joel Aaseby, the Debtor's former Vice President of Finance and Administration, and Paul Schmidt, the Debtor's Assistant Controller, will be responsible for the consummation of the Plan other than making distributions to holders of Class 4 Claims, as described below, which will be the responsibility of the Creditors' Committee and the Distribution Agent (as defined herein).

6.    Section 1129(a)(6) – Approval of Rate Changes.

Section 1129(a)(6) of the Bankruptcy Code is not applicable to this chapter 11 case because the Plan does not provide for, or contemplate, any regulated rate changes with respect to the current business.

7.    Section 1129(a)(7) – Best Interests of Creditors and Equity Interest Holders.

With respect to each impaired Class of Claims of the Debtor, each holder of a Claim in such Class has accepted the Plan or will receive or retain under the Plan on account of such Claim, property of a value, as of the Effective Date, that is not less than the amount

such holder would receive or retain if the Debtor was liquidated on the Effective Date under chapter 7 of the Bankruptcy Code.

8.      Section 1129(a)(8) – Acceptance of the Plan by Each Impaired Class.

Pursuant to 1129(a)(8) of the Bankruptcy Code, (a) Classes 3 and 5 are unimpaired and, pursuant to section 1126(f) of the Bankruptcy Code, are conclusively presumed to have accepted the Plan, and (b) Classes 1A (Allowed Claim of ANB), 1B (Allowed Claim of GE), 1C (Allowed Claim of US Bank) and 4 (Allowed general unsecured claims) voted to accept the Plan.  No votes were counted in Class 2 (other Secured Claims).  No Classes voted to reject the Plan.

9.      Section 1129(a)(9) – Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code.

Section 1129(a)(9) of the Bankruptcy Code has been satisfied because the Plan provides that Allowed Tax Claims will be paid in full in cash as soon as reasonably practicable after the later of (a) the Effective Date, and (b) when such Claim becomes an Allowed Claim.  The Plan also provides that holders of Allowed Administrative Claims will be paid in full in cash (a) on or as soon as reasonably practicable after the Effective Date, or (b) if such Claim is Allowed after the Effective Date, when such Claim is Allowed, or (c) upon such terms as may be agreed upon by the claimant and the Debtor.

10.     Section 1129(a)(10) – Acceptance by at Least One Impaired Class.

Section 1129(a)(10) of the Bankruptcy Code has been satisfied because, as indicated in the Voting Affidavit, at least one Class of Claims that is impaired under the Plan has accepted the Plan, excluding votes cast by insiders.  Indeed, Classes 1A (Allowed Claim of ANB), 1B (Allowed Claim of GE), 1C (Allowed Claim of US Bank) and 4 (Allowed

general unsecured claims) voted to accept the Plan.  No votes were counted in Class 2 (other Secured Claims).  No Classes voted to reject the Plan.

      11.    Section 1129(a)(11) – Feasibility of the Plan.

      Confirmation of the Plan is not likely to be followed by the need for further financial reorganization of the Debtor.  The Debtor will have sufficient funds to satisfy its obligations under the Plan and to fund the costs and expenses incurred in accordance therewith, and if the Debtor's assets are insufficient to make any payments to holders of Allowed Claims under the Plan, Krispy Kreme will advance funds to the Debtor sufficient for such payments to be made.

      12.    Section 1129(a)(12) – Payment of Bankruptcy Fees.

      In accordance with section 1129(a)(12) of the Bankruptcy Code, the Plan provides for the payment of all fees payable under 28 U.S.C. § 1930 on or before the Effective Date.  These fees will continue to be paid as they become due until this case is closed.  The Debtor has adequate means to pay all such fees.

      13.    Section 1129(a)(13) – Retiree Benefits.

      Section 1129(a)(13) of the Bankruptcy Code is not applicable to this chapter 11 case because the Debtor does not have any benefit plans as described in that section of the Bankruptcy Code, therefore, this provision is irrelevant to the Plan.

      14.    Section 1129(d) – Purpose of Plan.

      The primary purpose of the Plan is not the avoidance of taxes or the avoidance of application of section 5 of the Securities Act of 1933 (15 U.S.C. § 77e).

10

C.    Releases, Limitations of Liability and Exculpation.

1.    Pursuant to section 541 of the Bankruptcy Code, the Debtor or its estate is or would be entitled to assert in its own right or derivatively on behalf of all holders of any Claim or Interest or other person or entity any claim or cause of action against Krispy Kreme that is premised or based upon, or supported by, theories of alter ego liability or veil piercing (any such claims, the "Alter Ego Claims"). Accordingly, pursuant to section 541 of the Bankruptcy Code, such Alter Ego Claims are the exclusive property of the Debtor, as debtor in possession.

2.    For the reasons described in the Aaseby Affidavit, the releases of Claims and causes of action described in Article XIII of the Plan, which include releases of any Alter Ego Claims, constitute good faith compromises and settlements of the matters covered thereby. Such compromises and settlements are made in exchange for consideration and are in the best interests of holders of Claims and Interests, are fair, equitable, reasonable and are integral elements of the resolution of this chapter 11 case in accordance with the Plan. Each of the release and exculpation provisions set forth in the Plan: (1) is within the jurisdiction of the Court under 28 U.S.C. §§ 1334(a), (b), and (d); (2) is an essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code; (3) is an integral element of the transactions incorporated into the Plan; (4) confers material benefit on, and is in the best interest of, the Debtor, its estate and its creditors; (5) is important to the overall objectives of the Plan to finally resolve all Claims among or against the parties-in-interest in this chapter 11 case with respect to the Debtor; and (6) is consistent with sections 105, 1123, 1129 and other applicable provisions of the Bankruptcy Code.

3.      The failure to effect the release and exculpation provisions of the Plan would seriously impair the Debtor's ability to confirm the Plan.

D.     Satisfaction of Conditions to Confirmation.

Each of the conditions precedent to the entry of this Order has been satisfied, amended or waived in accordance with the Plan.

## II.

## CONCLUSIONS OF LAW

A.     Jurisdiction And Venue.

This Bankruptcy Court has jurisdiction over this mater pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2). The Debtor is and was qualified to be a debtor under section 109 of the Bankruptcy Code. Venue in the Northern District of Illinois was proper as of the Petition Date and continues to be proper under 28 U.S.C. §§ 1408 and 1409.

B.     Exemptions from Taxation.

To the fullest extent permitted under section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan, including, but not limited to, the sale of substantially all of the Debtor's Assets to Westward Dough, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment in the United States, and the appropriate state or local governmental officials or agents shall be, and hereby are, directed to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any of the

foregoing instruments or other documents without the payment of any such tax or governmental assessment.

C.    Exemptions from Securities Laws.

Pursuant to section 1125(d) of the Bankruptcy Code, the Debtor's transmittal of Plan solicitation packages and its solicitation of acceptance of the Plan will not be governed by or subject to any otherwise applicable law, rule or regulation governing the solicitation or acceptance of a plan of reorganization or the offer, issuance, sale or purchase of securities.   Accordingly, the Debtor and its respective directors, officers, employees, agents and professionals (acting in such capacity) are entitled to the protection of section 1125(e) of the Bankruptcy Code.

D.    Compliance with Section 1129 of the Bankruptcy Code.

The Plan complies in all respects with the applicable requirements of section 1129 of the Bankruptcy Code.

E.    Releases, Limitations of Liability and Exculpation.

1.    The Alter Ego Claims are the exclusive property of the Debtor, as debtor in possession, pursuant to section 541 of the Bankruptcy Code.

2.    Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a):  (a) the settlements, compromises, releases, limitations of liability and exculpations set forth in the Plan, including, but not limited to, the releases set forth in section 13.2 of the Plan, and the exculpation and limitation of liability provisions set forth in Section 13.4 of the Plan, are fair, equitable, reasonable and in the best interests of the Debtor, its estate, creditors and equity holders.

13

# III.

# ORDER

A.   Confirmation of the Plan.

Except as otherwise provided herein, the Plan, a copy of which (excluding Schedule 1) is attached hereto as Exhibit A, and each of its provisions shall be, and hereby are, confirmed and approved in each and every respect pursuant to section 1129 of the Bankruptcy Code. The terms of the Plan are incorporated by reference into, and are an integral part of, this Order. Notwithstanding the foregoing, if there is any direct conflict between the terms of the Plan and the terms of this Order, the terms of this Order shall control. All statements and comments regarding the Plan that are in opposition thereto, to the extent not already withdrawn or resolved pursuant to representations on the record at the Confirmation Hearing, shall be, and hereby are, overruled.

B.   Modifications to the Plan.

1.   Section 4.3 of the Plan is hereby deleted in its entirety and replaced with the following: Each holder of an Allowed Class 4 Claim shall receive its pro-rata share of the Class 4 Distribution Pool, to be distributed pursuant to Section 10.2 of this Plan.

2.   Section 4.1.3 of the Plan is hereby deleted in its entirety and replaced with the following: In full satisfaction and release of all Allowed Claims against the Debtor held by any holder of a Class 1C Claim, and in full satisfaction and release of any Claims against Krispy Kreme under the Class 1 Claim Guarantees, (a) $2,713,426.34 was paid to US Bank on the closing date of the sale of substantially all of the Debtor's Assets to Westward Dough from the Net Proceeds of such sale, and (b) on the Effective Date (or, in the sole

14

discretion of the Debtor, prior to the Effective Date, but after the Confirmation Date), the balance of the Allowed Claim of US Bank shall be paid in full in cash.

3.      Schedule 1 attached to the Plan is superseded and replaced by Amended Schedule 1 attached hereto as Exhibit B, and any reference in the Plan to Schedule 1 shall be a reference to Amended Schedule 1.  The Creditors' Committee acknowledges and agrees that Amended Schedule 1 supersedes and replaces Schedule 1 attached to the Plan.

4.      Notwithstanding any contrary provisions in the Plan, distributions on account of Allowed Class 4 Claims from the Class 4 Distribution Pool and the Class 4 Distribution Account (as defined herein) shall be made by Development Specialists, Inc. who shall act as the disbursing agent for amounts to be distributed to holders of Allowed Class 4 Claims in accordance with the Plan and this Order (the "Distribution Agent").

5.      Section 10.2 of the Plan is hereby deleted in its entirety and replaced with the following:

(a)     On the Effective Date, the dollar amount in the "Aggregate Dollars to Be Deposited in Class 4 Distribution Account ($$ in Millions)" column on Amended Schedule 1 that corresponds to the total of all Allowed Claims and Contested Claims in Class 4 as of the Effective Date (excluding the Claims of Krispy Kreme) shall be funded into a segregated account (the "Class 4 Distribution Account") established by the Distribution Agent (as defined herein) and held for the benefit of holders of the Class 4 Claims (except Krispy Kreme).  If the Debtor has insufficient funds to fully fund the above amount on the Effective Date, Krispy Kreme shall advance the Debtor sufficient monies to fully fund such amount on the Effective Date.

(b)     The sole signatory of the Class 4 Distribution Account shall be the Distribution Agent.  The Distribution Agent

shall have the sole and exclusive authority to make any distributions from the Class 4 Distribution Pool and the Class 4 Distribution Account in accordance with the Plan and this Order. Other than funding on the Effective Date and providing the Distribution Agent with information as to which holders of Allowed Class 4 Claims to make distributions to and the appropriate amounts, neither the Debtor nor Krispy Kreme shall have any responsibility for the Class 4 Distribution Account or for making any distributions to holders of Class 4 Claims.

(c)   All costs of establishing and maintaining the Class 4 Distribution Account and making distributions from the Class 4 Distribution Pool, including, but not limited to, the fees and expenses charged by the Distribution Agent, shall be paid from the Class 4 Distribution Pool, and neither the Debtor, Krispy Kreme, nor any other party shall have any responsibility for any such costs or expenses. Immediately upon the deposit of the amount described in paragraph 4(a) above on the Effective Date into the Class 4 Distribution Account and before any distributions are made therefrom, the Distribution Agent shall take $10,000 from the Class 4 Distribution Account which represents the fee that the Distribution Agent shall receive on account of its obligations as Distribution Agent, plus an additional amount of $2,500 to cover expenses it will incur in its capacity as Distribution Agent. The above-referenced $12,500 shall be the total amount the Distribution Agent receives for performing its obligations under the Plan and this Order.

(d)   There shall be two (2) distributions from the Class 4 Distribution Pool to holders of Class 4 Claims: (a) an initial distribution thirty-five (35) days after the Effective Date to holders of Class 4 Claims that have been Allowed by the date that is thirty (30) days after the Effective Date in an amount equal to the number that is obtained by dividing the amount of the individual Allowed Claim by the maximum amount of potential Allowed Class 4 Claims (except Krispy Kreme), and multiplying that fraction by $507,500; and (b) a final distribution to holders of Allowed Class 4 Claims upon conclusion of the claims reconciliation

process in an amount such that (taking into account any payments already made) each holder of an Allowed Class 4 Claim receives a pro-rata share of the Class 4 Distribution Pool. Any amounts initially deposited into the Class 4 Distribution Account on the Effective Date that are not to be distributed on account of Allowed Class 4 Claims consistent with Amended Schedule 1, shall be paid to Krispy Kreme pursuant to Section 4.3.1 of the Plan.

(c)   For purposes of this amended Section 10.2, the "maximum amount of potential Allowed Class 4 Claims (except Krispy Kreme)" shall mean the total of all Allowed Claims and Contested Claims in Class 4 as of thirty (30) days after the Effective Date, excluding the claims of Krispy Kreme.

6.   Section 10.5 of the Plan shall be applicable to any undeliverable and/or unclaimed distributions relating to Allowed Class 4 Claims and returned to the Distribution Agent.

7.   Section 13.1 of the Plan is hereby deleted in its entirety and replaced with the following:  Pursuant to section 1141(d)(3) of the Bankruptcy Code, Confirmation will not discharge Claims against the Debtor; provided however, that no holder of a Claim against the Debtor may, on account of such Claim, seek or receive any payment or other distribution from, or seek recourse against, property of the Debtor or its estate, except as expressly provided in this Plan.

8.   Section 13.3 of the Plan is hereby deleted in its entirety and replaced with the following:  *Except as otherwise provided herein, from and after the Effective Date, all holders of Claims or Interests shall be permanently enjoined from commencing or continuing in any manner, any suit or action on account of any Claim, Interest,*

*obligation, debt, right, cause of action, remedy or liability released or agreed to be released*

*pursuant to this Plan.*

9.      Section 16.3 of the Plan is hereby deleted in its entirety and replaced with the following: "Allowed Claim of ANB" shall mean all of the Claims of ANB as of the Effective Date, which shall be Allowed pursuant to this Plan in the aggregate amount of $648,330.12.

10.     Section 16.18 of the Plan is hereby deleted in its entirety and replaced with the following: "Class 4 Distribution Pool" shall mean the amount of funds calculated pursuant to the "Aggregate Dollars Payable to Trade Claims ($$ in Millions)" column in Amended Schedule 1.

C.    Effects of Confirmation.

1.      In accordance with section 1141 of the Bankruptcy Code, the Plan, its provisions and this Order are binding upon the Debtor, any person or entity acquiring or receiving property under the Plan and any holder of a Claim or Interest, whether or not the Claim or Interest is Allowed under section 502 of the Bankruptcy Code or impaired under the Plan, and whether or not the holder of such Claim or Interest has filed, or is deemed to have filed, a proof of Claim or Interest or has accepted or rejected the Plan.

2.      Immediate Effectiveness; Successors and Assigns.  Immediately upon the entry of this Order, the terms of the Plan shall be, and hereby are, deemed binding upon the Debtor, any and all holders of Claims or Interests (irrespective of whether such Claims or Interests are impaired under the Plan or whether the holders of such Claims or Interests accepted or are deemed to have accepted the Plan), any and all non-debtor parties to

18

executory contracts and unexpired leases with the Debtor and the respective heirs, executors, administrators, successors or assigns, if any, of any of the foregoing.

3.     Corporate Authorization. The Manager of the Debtor is authorized to issue, execute and deliver the agreements, documents and instruments contemplated by the Plan in the name of, and on behalf of, the Debtor. Notwithstanding the foregoing, all matters provided under the Plan involving the business organization of the Debtor or Manager approval under applicable non-bankruptcy law shall be deemed authorized and approved without any requirement of further action by the Debtor or the Debtor's Manager. No creditor or other party in interest shall be entitled to demand either approval by the Debtor's Manager for any action of the Debtor authorized under this Plan or Order, nor may any creditor or other party in interest condition any transaction with the Debtor before, on or after the Effective Date on the receipt of evidence of approval by the Debtor's Manager.

4.     All injunctions or stays provided for in this chapter 11 case under sections 105 or 362 of the Bankruptcy Code or otherwise, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or this Order), shall remain in full force and effect until the Effective Date, except that nothing herein shall bar the taking of such other actions as are necessary to effectuate the transactions specifically contemplated by the Plan or by this Order.

5.     Releases of Liens. All mortgages, deeds of trust, liens or other security interests against the property of the Debtor or its estate shall be deemed fully released and discharged as of the Effective Date, subject to payment of the sums called for under the Plan.

19

6.      Miscellaneous.  Notwithstanding the applicability of Bankruptcy Rules 3020(e), 6004(g), 6006(d), 7062 or 9014, or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry and no stay shall apply.

D.      Actions in Furtherance of the Plan.

The approvals and authorizations specifically set forth in this Order are non-exclusive and are not intended to limit the authority of the Debtor or any representative thereof to take any and all actions necessary or appropriate to implement, effectuate and consummate any and all documents or transactions contemplated by the Plan or this Order. Accordingly, the Debtor or any representative thereof is authorized to execute, deliver, file or record such, contracts, instruments, releases or documents or take such other actions as such representative may determine are necessary or appropriate to effectuate or further evidence the terms and conditions of the Plan and this Order, all without further application to or order of the Bankruptcy Court and whether or not such actions and documents are specifically referred to in the Plan, the Disclosure Statement, this Order or the Disclosure Statement Order.

E.      Releases, Limitations of Liability and Exculpation.

1.      For the reasons described in the Aaseby Affidavit, the releases set forth in section 13.2 of the Plan, and the exculpation and limitation of liability provisions set forth in section 13.4 of the Plan, are approved in their entirety.

2.      The commencement or prosecution by any entity, whether directly, indirectly derivatively or otherwise, of any claims, obligations, suits, judgments, damages,

demands, debts, rights, causes of action or liabilities released under the Plan is permanently enjoined.

F.    Retention of Jurisdiction.

Notwithstanding the entry of this Order and the occurrence of the Effective

Date, the Bankruptcy Court shall retain such jurisdiction over this chapter 11 case as is

legally permissible, including jurisdiction of the matters set forth in Article XIV, which

provisions are incorporated herein by reference.


IT IS SO ORDERED.


Chicago, Illinois
Dated: _____, 2006


_____
United States Bankruptcy Judge   JUN 1 3 2006


Respectfully submitted,

GLAZED INVESTMENTS, LLC

By:  /s/   Joel Aaseby_____
        Joel Aaseby



   /s/  Daniel A. Zazove_____
One of Its Attorneys

Daniel A. Zazove
Jason D. Horwitz
PERKINS COIE LLP
131 South Dearborn
Suite 1700
Chicago, Illinois 60603
Phone:  (312) 324-8400
Facsimile:  (312) 324-9400

# **EXHIBIT A**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: | Case No. 06-00932 |
| GLAZED INVESTMENTS, LLC, | Chapter 11 |
| Debtor. | Hon. Pamela S. Hollis |

## DEBTOR'S AMENDED LIQUIDATING PLAN OF REORGANIZATION PURSUANT TO CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE DATED MAY 8, 2006

Glazed Investments, LLC, a Delaware limited liability company, proposes this Amended Liquidating Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code.

### INTRODUCTION

On February 3, 2006, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Prior to the Petition Date, the Debtor operated twenty Krispy Kreme franchise locations and supplied approximately 1,340 wholesale locations in Minnesota, Wisconsin and Colorado.

The Debtor commenced this chapter 11 case to facilitate the sale of substantially all of its Assets. On March 16, 2006, the Bankruptcy Court authorized the Debtor to consummate the sale of substantially all its Assets to Westward Dough for $10 million. That sale closed on March 30, 2006. The Net Proceeds from the sale of the Assets, the proceeds from the collection or sale of any remaining estate Assets, any cash on hand and, if necessary, funds that Krispy Kreme may be required to contribute pursuant to the terms herein will be used to fund the Plan. The Debtor's equity owners will not receive any distribution on account of their ownership Interests in the Debtor.

[60342-0001/CH061070.068]

# ARTICLE I

## GENERAL PROVISIONS

### 1.1     Rules of Interpretation and Construction.

The rules of construction applicable to the Bankruptcy Code and the Bankruptcy Rules apply to this Plan.

### 1.2     Entire Agreement.

This Plan supersedes all prior discussions, understandings, agreements and documents pertaining or relating to any subject matter of the Plan other than the Plan Settlement Term Sheet, dated March 15, 2006, between the Debtor, the Creditors' Committee and Krispy Kreme.

### 1.3     Governing Law.

The Bankruptcy Code and the Bankruptcy Rules apply to the rights and obligations arising under this Plan.  All non-bankruptcy issues shall be governed, construed and enforced in accordance with the laws of the State of Illinois, without giving effect to the principles of conflicts of law of the State of Illinois.

### 1.4     Severability.

Should any provision or section of this Plan be determined to be unenforceable, such determination shall not impair, limit or otherwise affect the enforceability of any other provision or section of this Plan.

### 1.5     Headings.

Headings of the articles, paragraphs and sections of the Plan are for convenience only and shall not affect the meaning of any Plan provision.

### 1.6     Notices.

Any notice to the Debtor shall be made in writing and deemed to have been given when received by counsel for the Debtor, Daniel A. Zazove, Perkins Coie LLP, 131 South Dearborn Street, Suite 1700, Chicago, Illinois 60603. Payments, distributions, notices and requests to holders of Claims shall be sent to (a) the address set forth on the proof(s) of claim filed by any claimant, or (b) if a claimant has not filed a proof of claim, the address of such claimant as set forth on the Debtor's schedules of liabilities filed with the Bankruptcy Court, or (c) if a claimant has not filed a proof of claim and is not listed on the Debtor's schedules of liabilities, the last known address of such holder. Any claimant may designate in writing another address which shall be effective upon receipt by Debtor's counsel.

### 1.7    Modification of the Plan.

The Debtor may amend or modify the Plan prior to Confirmation; provided however, that the Debtor may not make any modifications to any provisions of the Plan that affect holders of Class 4 General Unsecured Claims without the Creditors' Committee's written consent. After Confirmation, the Debtor may, upon order of the Bankruptcy Court, amend or modify the Plan to remedy any defect or omission or reconcile any inconsistency in the Plan as necessary to carry out the purpose and intent of the Plan. A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan as modified if the proposed modification does not materially and adversely change the treatment of the Claim of such holder.

### 1.8    Revocation or Withdrawal.

The Plan may be revoked or withdrawn by the Debtor prior to the Confirmation Date. If the Plan is revoked or withdrawn, then the Plan shall be deemed null and void.

### 1.9    Time Periods.

In computing any time specified by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## ARTICLE II

## DESIGNATION OF CLAIMS AND INTERESTS

### 2.1    Classification in General.

A Claim or Interest is classified in a particular Class only to the extent that it qualifies within the description of that Class. The Bankruptcy Court shall have exclusive jurisdiction over disputes concerning the classification of Claims or Interests. Resolution of any such disputes shall not be a condition precedent to Confirmation or Consummation of the Plan.

### 2.2    Unclassified Claims.

Unclassified Claims shall consist of all Administrative Claims and Tax Claims.

### 2.3    Designation of Classes.

The Classes of Claims and Interests are designated as follows:

**2.3.1 *Class 1.*** Allowed Claims of ANB, GE and US Bank, pursuant to the ANB Loans, the GE Notes and the US Bank Loan Documents, respectively:

(i)      *Class 1A.* The Allowed Claim of ANB.

(ii)     *Class 1B.* The Allowed Claim of GE.

(iii)    *Class 1C.* The Allowed Claim of US Bank.

**2.3.2 *Class 2.*** All Allowed Secured Claims against the Debtor other than the Class 1A, 1B or 1C Claims.

**2.3.3 *Class 3.*** All Allowed Other Priority Claims against the Debtor.

**2.3.4 *Class 4.*** All Allowed General Unsecured Claims against the Debtor.

2.3.5 *Class 5.* Equity Interests in the Debtor of whatever nature or description and however held.

## ARTICLE III

## TREATMENT OF UNIMPAIRED CLAIMS AND INTERESTS

### 3.1     Unclassified Claims.

3.1.1 **Administrative Claims.**  Subject to the applicable provisions of section 330(a) and 331 of the Bankruptcy Code and except as otherwise provided by the Plan, each holder of an Allowed Administrative Claim shall be paid in full in cash (a) on or as soon as reasonably practicable after the Effective Date, or (b) if such Claim is Allowed after the Effective Date, when such Claim is Allowed, or (c) upon such terms as may be agreed upon by the claimant and the Debtor.  Contested Administrative Claims shall be paid only when Allowed by order of the Bankruptcy Court.  Professional fees shall be paid promptly upon entry of an order of the Bankruptcy Court approving such professional's application for fees and expenses after notice and a hearing.

3.1.2 **Tax Claims.**  All Allowed Tax Claims will be paid in full in cash as soon as reasonably practicable after the later of (a) the Effective Date, and (b) when such Claim becomes an Allowed Claim.

### 3.2     Class 3 Claims.

Each holder of an Allowed Class 3 Claim shall receive the full amount of its Allowed Claim in cash on or as soon as reasonably practicable after the later of (a) the Effective Date, and (b) when such Claim becomes an Allowed Claim.

### 3.3     Class 5 Interests.

The holders of Class 5 Interests shall retain their Interests in the Debtor, but shall not receive any distributions on account of such Interests.

### 3.4    Debtor's Right to Object to Claims.

Nothing in the Plan shall affect the Debtor's rights to object to the Allowance of any Claim, including all rights in respect of legal and equitable defenses, setoffs and recoupments.

**ARTICLE IV**

**TREATMENT OF IMPAIRED CLAIMS**

### 4.1    Class 1 Claims.

In full satisfaction and release of all Allowed Secured Claims against the Debtor held by any holder of a Class 1 Claim, holders of Allowed Class 1 Claims shall receive the following:

4.1.1 *Class 1A Claim:*   In full satisfaction and release of all Allowed Claims against the Debtor held by any holder of a Class 1A Claim, and in full satisfaction and release of any Claims against Krispy Kreme under the Class 1 Claim Guarantees, (a) $322,862.18 was paid to ANB on the closing date of the sale of substantially all of the Debtor's Assets to Westward Dough from the Net Proceeds of such sale, and (b) on the Effective Date, the balance of the Allowed Claim of ANB shall be paid in full in cash.

4.1.2 *Class 1B Claim:*   In full satisfaction and release of all Allowed Claims against the Debtor held by any holder of a Class 1B Claim, and in full satisfaction and release of any Claims against Krispy Kreme under the Class 1 Claim Guarantees, (a) $2,294,590.50 was paid to GE on the closing date of the sale of substantially all of the Debtor's Assets to Westward Dough from the Net Proceeds of such sale, and (b) on the Effective Date, the balance of the Allowed Claim of GE shall be paid in full in cash.

**4.1.3 *Class 1C Claim:*** In full satisfaction and release of all Allowed Claims against the Debtor held by any holder of a Class 1C Claim, and in full satisfaction and release of any Claims against Krispy Kreme under the Class 1 Claim Guarantees, (a) $2,713,426.34 was paid to US Bank on the closing date of the sale of substantially all of the Debtor's Assets to Westward Dough from the Net Proceeds of such sale, and (b) on the Effective Date, the balance of the Allowed Claim of US Bank shall be paid in full in cash.

**4.2    Class 2 Claims.**

In the sole discretion of the Debtor, each holder of an Allowed Class 2 Claim shall receive either (a) the full amount of its Allowed Claim in cash as soon as reasonably practicable after the later of (i) the Effective Date, and (ii) when such Claim becomes an Allowed Claim, or (b) the collateral securing such Claim without representation or warranty by, or further recourse against, the Debtor.

**4.3    Class 4 Claims.**

In full satisfaction and release of all Claims against the Debtor, each holder of an Allowed Class 4 Claim shall receive its pro-rata share of the Class 4 Distribution Pool, to be distributed pursuant to Section 10.2 of this Plan.

**4.3.1   Krispy Kreme Distribution.**

On the Effective Date, Krispy Kreme shall waive its rights to receive any distribution from the Class 4 Distribution Pool; provided that, on account of its Class 4 Claims against the Debtor, Krispy Kreme shall receive all funds of the Debtor's estate remaining (if any) after payment in full of all Allowed Administrative Claims and Allowed Tax Claims and payment of Allowed Claims in Classes 1, 2, 3 and 4 as set forth in this Plan.

## ARTICLE V

## ACCEPTANCE OR REJECTION OF THE PLAN

### 5.1    Voting Classes.

Each holder of an Allowed Claim in Classes 1A, 1B, 1C, 2 and 4 shall be entitled to vote to accept or reject the Plan.

### 5.2    Acceptance by Impaired Classes.

An impaired Class of holders of Claims shall have accepted the Plan if the Plan is accepted by at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have voted to accept or reject the Plan. A Class of holders of Claims shall be deemed to accept the Plan in the event that no holder of a Claim within that Class submits a ballot by the deadline for doing so. All Claims shall be allowed for voting purposes only unless objected to prior to the hearing on Confirmation of the Plan.

### 5.3    Presumed Acceptance of the Plan.

Classes 3 and 5 are unimpaired under the Plan and, therefore, are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

### 5.4    Non-Consensual Confirmation.

In the event that any impaired Class of Claims shall fail to accept the Plan in accordance with section 1129(a) of the Bankruptcy Code, the Debtor reserves the right to request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code or amend the Plan.

## ARTICLE VI

## IMPLEMENTATION OF THE PLAN

**6.1**    **Continued Limited Liability Company Existence; Vesting of Assets.**

(a)    Subject to the provisions of this Plan, the Debtor shall continue to exist after the Effective Date as a limited liability company in accordance with the laws of the state of Delaware and pursuant to its certificate of formation and limited liability operating agreement in effect prior to the Effective Date, provided however, that the purpose of the post-Effective Date Debtor shall be limited to taking such actions as are necessary to implement, and are consistent with implementing, this Plan. Any dispute as to the propriety of any action sought to be taken by the Debtor after the Effective Date shall be resolved by the Bankruptcy Court. As soon as reasonably practicable after the Debtor exhausts its assets by making the final distribution of cash under this Plan, the Debtor shall (i) effectuate its dissolution in accordance with the laws of the state Delaware, and (ii) cause the resignation of all of its officers and directors.

(b)    Except as expressly provided elsewhere in this Plan, on the Effective Date, all property of the Debtor's estate shall revest in the Debtor.

**6.2**    **Duties and Responsibilities of Post-Confirmation Debtor.**

After the Confirmation Date, the post-Confirmation Debtor shall continue to be empowered to execute contracts and documents of transfer on behalf of its estate and the post-Confirmation entity and shall continue to be responsible for administering its estate and the post-

Confirmation entity. In addition, the post-Confirmation Debtor shall have the power, authority, and the obligation to:

      (a)    establish interest bearing, segregated accounts for the Class 4 Distribution Pool and the Remaining Net Proceeds;

      (b)    distribute the proceeds of the Debtor's estate in accordance with the terms of this Plan;

      (c)    object to the allowance of any Claim filed or scheduled in this chapter 11 case as it deems appropriate and settle, dismiss or otherwise dispose of any such Claim;

      (d)    prosecute avoidance actions under 11 U.S.C. §§ 544, 547, 548, 549, 550 and 553;

      (e)    retain and pay at normal and customary rates, on a monthly basis, professionals in connection with this case, including, but not limited to, professionals retained by the Debtor, the Creditors' Committee and the Post-Confirmation Creditors' Committee;

      (f)    execute on behalf of the estate any contract or documents necessary or advisable to effectuate the terms of the Plan;

      (g)    act as the disbursing agent of the estate in accordance with the terms of the Plan;

      (h)    prepare and submit to taxing authorities all tax returns and other such information as may be required by the taxing authorities; and

      (i)    undertake such further actions that may be necessary, desirable or incident to any of the foregoing or to effectuate this Plan.

## ARTICLE VII

### MEANS FOR IMPLEMENTATION OF THE PLAN

#### 7.1    Sources of Funding.

On March 16, 2005, the Bankruptcy Court entered the Sale Order approving the sale of substantially all of the Debtor's Assets to Westward Dough for $10 million. The sale closed on March 30, 2006. On the closing date, the following amounts were paid to the holders of the

Class 1 Claims from the Net Proceeds of such sale:  $2,713,426.34 to US Bank, $2,294,590.50 to

GE and $322,862.18 to ANB.  The Remaining Net Proceeds of the sale of substantially all of the

Debtor's Assets to Westward Dough, the proceeds from the collection or sale of any remaining

estate Assets and any cash on hand shall fund the Plan and distributions to holders of Allowed

Claims in accordance with this Plan.  To the extent such estate assets are insufficient to make any

payments to holders of Allowed Claims under this Plan, Krispy Kreme shall advance funds to the

Debtor sufficient for such payments to be made, and any such advance shall be deemed to have

been made on account of the Class 1 Claim Guarantees regardless of the obligation of the Debtor

paid with funds advanced by Krispy Kreme.

###### 7.2     No Transfer Taxes.

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to

this Plan, including, but not limited to, the sale of substantially all of the Debtor's Assets to

Westward Dough, shall not be subject to any document recording tax, stamp tax, conveyance fee,

intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording

tax or other similar tax or governmental assessment in the United States, and the Confirmation

Order shall direct the appropriate state or local governmental officials or agents to forgo the

collection of any such tax or governmental assessment and to accept for filing and recordation

any of the foregoing instruments or other documents without the payment of any such tax or

governmental assessment.

### ARTICLE VIII

### TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

##### 8.1     All Executory Contracts and Unexpired Leases Are Rejected.

All executory contracts and unexpired leases that (a) the Debtor entered into prior to the commencement of this chapter 11 case, (b) are executory or unexpired, as applicable, as of the Effective Date, and (c) have not been assumed or rejected pursuant to 11 U.S.C. § 365 prior to the Effective Date, shall be deemed rejected by the Debtor as of the Effective Date.

### 8.2    Bar Date for Claims Resulting from the Rejection of Contracts Hereunder.

All claims arising from the rejection of executory contracts or unexpired leases under this Plan must be filed within twenty (20) days of the Effective Date.

### ARTICLE IX

### PROCEDURE FOR RESOLVING CONTESTED CLAIMS

### 9.1    Claims Objection Bar Date.

After the Effective Date, only the Debtor may file objections to the allowance of Claims. Unless the Bankruptcy Court orders otherwise, the Debtor shall file all objections to the allowance of any Claim on or before the Claims Objection Bar Date. If no such objection is filed on or before the Claim Objection Bar Date with respect to a particular Claim, such Claim shall be deemed Allowed. The Debtor reserves the right to seek extensions of the Claims Objection Bar Date.

### 9.2    Objection to Claims; Prosecution of Contested Claims.

After the Effective Date, the Debtor, after consulting with the Post-Confirmation Creditors' Committee, shall have authority to file, settle, compromise or withdraw any objections to Claims without the consent or approval of any third party and without further order of the Bankruptcy Court.

### 9.3    Allowance of Claims.

Except as expressly provided herein or in any order entered in this chapter 11 case prior to the Effective Date (including the Confirmation Order), no Claim shall be deemed Allowed, unless and until (a) such Claim is deemed Allowed by the Bankruptcy Code, (b) the Bankruptcy Court enters a Final Order allowing such Claim, or (c) the Debtor, after consulting with the Post-Confirmation Creditors' Committee, agrees to allow such Claim.  Except as expressly provided in the Plan or any order entered in this chapter 11 case prior to the Effective Date (including the Confirmation Order), the Debtor will have and retain any and all rights and defenses it had with respect to any Claim as of the Petition Date.

### 9.4    Disallowance of Claims of Entities from Whom Property is Recoverable.

Pursuant to 11 U.S.C. § 502(d), the Bankruptcy Court shall disallow any Claim of any entity:   (a) from which property is recoverable under sections 542, 543, 550 or 553 of the Bankruptcy Code, or (b) that is a transferee of a transfer avoidable under sections 522(1), 522(h), 544, 545, 547, 548, 549 or 724(a) of the Bankruptcy Code.  Such Claims may be Allowed in the event that the entity or transferee has turned over such property, or paid such amount, to the Debtor.

### ARTICLE X

### PROVISIONS REGARDING DISTRIBUTIONS

### 10.1    General.

All distributions under the Plan will be made by the Debtor's estate.  Whenever any distribution to be made under the Plan is due on a day other than a business day, such

distribution shall instead be made, without interest, on the immediately succeeding business day, but will be deemed to have been made on the date due.

### 10.2   Class 4 Distribution Pool.

On the Effective Date, the maximum amount of the Class 4 Distribution Pool (based upon the dollar amount in the "Aggregate Dollars Payable to Trade Claims" column on Schedule 1, which corresponds to the total of all Allowed Claims and Contested Claims in Class 4 as of the Effective Date, excluding the Claims of Krispy Kreme) shall be funded into a segregated account held for the benefit of holders of the Class 4 Claims (except Krispy Kreme). If the Debtor has insufficient funds to fully fund the maximum amount of the Class 4 Distribution Pool on the Effective Date, Krispy Kreme shall advance the Debtor sufficient monies to fully fund the Class 4 Distribution Pool on the Effective Date.

There shall be two (2) distributions from the Class 4 Distribution Pool to holders of Class 4 Claims: (a) an initial distribution thirty-five (35) days after the Effective Date to holders of Class 4 Claims that have been Allowed by the date that is thirty (30) days after the Effective Date in an amount equal to the number that is obtained by dividing the amount of the individual Allowed Claim by the maximum amount of potential Allowed Class 4 Claims (except Krispy Kreme), and multiplying that fraction by $520,000; and (b) a final distribution to holders of Allowed Class 4 Claims upon conclusion of the claims reconciliation process in an amount such that (taking into account any payments already made) each holder of an Allowed Class 4 Claim receives a pro-rata share of the Class 4 Distribution Pool. Any amounts initially funded into the Class 4 Distribution Pool on the Effective Date that are not to be distributed on account of Allowed Class 4 Claims consistent with Schedule 1, shall be paid to Krispy Kreme pursuant to Section 4.3.1 of this Plan.

For purposes of this Section 10.2, the "maximum amount of potential Allowed Class 4 Claims (except Krispy Kreme)" shall mean the total of all Allowed Claims and Contested Claims in Class 4 as of thirty (30) days after the Effective Date, excluding the claims of Krispy Kreme.

### 10.3   Class 1 Claims.

As a condition precedent to receiving and retaining the distributions set forth in Section 4.1 of this Plan, holders of Class 1 Claims shall be required to (a) execute a release, in form and substance reasonably satisfactory to Krispy Kreme, of any and all Claims under the Class 1 Claim Guarantees, and (b) return to Krispy Kreme any outstanding letters of credit or any other collateral securing any Claim of such holder against Krispy Kreme related to its Class 1 Claims or its Class 1 Claim Guarantees.

### 10.4   Delivery of Distributions.

Subject to the provisions of Bankruptcy Rule 2002(g), and except as otherwise provided herein, distributions and deliveries to holders of Allowed Claims shall be made in accordance with the notice provisions in Section 1.6.

### 10.5   Undeliverable and Unclaimed Distributions; Time Bar to Cash Payments.

(a)    If any final distribution is returned to the Debtor as undeliverable, no further distributions shall be made to such holder unless and until the Debtor is notified, in writing, of such holder's then current address.  Checks issued by the Debtor on account of Allowed Claims that are not returned as undeliverable, but are not negotiated within sixty (60) days from and after the date of issuance thereof shall be null and void.

(b)    Any holder of an Allowed Claim that does not assert its rights pursuant to the Plan to receive a final distribution within ninety (90) days from and after the date (a) such distribution is returned as undeliverable, or (b) of the issuance of a check that has not been returned as undeliverable, but is null and void because it was not timely negotiated, shall have such holder's Claim for such distribution discharged and shall be forever barred from asserting any such Claim against the estate, the Debtor or its assets.

(c)    Any entities ultimately receiving undeliverable cash, voided checks or unclaimed distributions shall not be entitled to any interest or other accruals of any kind. Nothing contained in the Plan shall require the Debtor to attempt to locate any holder of an Allowed Claim or an Allowed Interest. Any undeliverable or unclaimed distributions shall be ratably redistributed to holders of Allowed Claims in accordance with this Plan until such Allowed Claims are paid in full, and thereafter shall be retained by Krispy Kreme.

### 10.6    Compliance with Tax Requirements/Allocation.

To the extent applicable, the Debtor shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.

### 10.7    Setoffs.

The Debtor may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, setoff against any Allowed Claim and the distributions to be made pursuant to the Plan on account thereof (before any distribution is made on account of such Claim) the claims, rights and causes of action of any nature that the Debtor may hold against the holder of

[60342-0001/CH061070.068]                    16

such Allowed Claim; provided however, that neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such claims, rights and causes of action that the Debtor may possess against such holder; provided further, that nothing contained in the Plan is intended to limit the rights of any creditor to effectuate a setoff prior to the Effective Date in accordance with the provisions of sections 362 and 553 of the Bankruptcy Code.

### 10.8   Distributions to Contested Claims.

Except as otherwise provided herein, no distribution will be made with respect to all or any portion of any Contested Claim pending the entire resolution thereof in the manner prescribed herein.

### 10.9   Distributions Under Five Dollars.

Other than the final distribution, no distribution of less than $5.00 shall be made to the holders of any Allowed Claim.

### 10.10   Interest on Claims.

Unless otherwise specifically provided for in this Plan or the Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim. Unless such Claim is a Secured Claim entitled to postpetition interest pursuant to section 506 of the Bankruptcy Code, interest shall not accrue or be paid upon any Contested Claim with respect to the period from the Petition Date to the date a final distribution is made thereon, if and after such Contested Claim becomes an Allowed Claim.

**ARTICLE XI**

**CONDITIONS PRECEDENT TO THE EFFECTIVE DATE**

### 11.1    Conditions Precedent to Effective Date of the Plan.

The occurrence of the Effective Date and substantial consummation of the Plan shall be subject to the satisfaction of the following conditions precedent:

(a)     (i) The Confirmation Order shall have been entered by the Bankruptcy Court in form and substance satisfactory to the Debtor, (ii) more than ten (10) days shall have elapsed since the Confirmation Date, and (iii) except as provided below, the Confirmation Order is in full force and effect and is not stayed; and

(b)     All actions, documents and agreements necessary to implement the Plan shall have been effected or executed.

Notwithstanding the foregoing, the Effective Date may occur notwithstanding the pendency of an appeal of the Confirmation Order or any order related thereto so long as there is no stay in effect. The Effective Date may occur before the expiration of time to take an appeal or to seek reconsideration of the Confirmation Order without the giving of any notice to any objecting party. The Debtor may seek the dismissal of any appeal as moot following the Effective Date.

### 11.2    Waiver of Conditions Precedent.

To the extent practicable or legally permissible, the Debtor may at any time waive, in whole or in part, in its sole discretion, each of the conditions precedent above without notice or order of the Bankruptcy Court and without any formal action other than proceeding as if such condition did not exist.

### 11.3    Effect of Non-Occurrence of Conditions to the Effective Date.

If the Effective Date of the Plan does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall (a) constitute a

waiver or release of any Claims by or against, or any Interests in, the Debtor, (b) prejudice in any manner the rights of the Debtor, or (c) constitute an admission, acknowledgment, offer or undertaking by the Debtor in any respect.

### 11.4    Limited Scope.

Nothing in this Plan is intended, nor should it be construed, to enlarge or diminish the liability of the officers or directors of the Debtor for any of the obligations of the Debtor.  Any such liability shall be determined in accordance with applicable non-bankruptcy law.

### ARTICLE XII

### RETENTION OF CAUSES OF ACTION

### 12.1    Reservation.

As of the Confirmation Date, (a) the Debtor shall reserve all of its Claims and causes of action arising under either the Bankruptcy Code (including, but not limited to, sections 510, 542, 543, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code or otherwise) or under other applicable federal or state law, including, but not limited to, any third-party claims, counterclaims and cross-claims; and (b) the Debtor shall have the sole and exclusive authority, after consulting with the Post-Confirmation Creditors' Committee, to prosecute, abandon, settle or adjust its Claims or causes of action without the consent or approval of any third party and without further order of the Bankruptcy Court.

### 12.2    No Waiver.

Unless a Claim or cause of action against a creditor or other person or entity is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order, the Debtor expressly reserves such Claim or cause of action for later adjudication by the Debtor, including,

but not limited to, Claims and causes of action not specifically identified or which the Debtor may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtor at this time or facts or circumstances which may change or be different from those which the Debtor now believes to exist.

### 12.3    Preferences.

A number of holders of Class 4 Claims received payments prior to the Petition Date that the Debtor asserts constitute avoidable preferences under section 547 of the Bankruptcy Code. Holders of Class 4 Claims that (a) are entitled to vote on the Plan, and (b) the Debtor asserts have received avoidable preferences, may receive, in conjunction with their ballot for voting on the Plan, an option to elect to waive all Claims against the Debtor in exchange for a release by the Debtor of its Claims against such holder. If such election is not made by the holder of such Class 4 Claim by the deadline for voting on the Plan, then all rights and Claims of any kind by the Debtor against such holder, and by such holder against the Debtor, shall be reserved. Further, if the Debtor intends to pursue a preference action against any holder of a Class 4 Claim who does not receive a ballot containing the aforementioned election option, then the Debtor shall not initiate any such preference action unless it first extends to such holder of a Class 4 Claim a formal written offer pursuant to which such creditor may elect to waive all of its Claims against the Debtor in exchange for a release by the Debtor of all of its Claims against such creditor.

### ARTICLE XIII

### DISCHARGE, RELEASE, INJUNCTIVE AND RELATED PROVISIONS

### 13.1    Discharge of the Debtors.

Pursuant to section 1141(d)(3) of the Bankruptcy Code, Confirmation will not discharge Claims against the Debtor; provided however, that no holder of a Claim against the Debtor may,

on account of such Claim, seek or receive any payment or other distribution from, or seek recourse against, the Debtor, its successors, property of the estate or its property, except as expressly provided in this Plan.

### 13.2    Releases by the Debtor.

Except as otherwise specifically provided herein, for good and valuable consideration, including the service of the Releasees to facilitate the expeditious sale of the Assets, the funding of the Plan, including payment in full of Allowed Administrative Claims, Allowed Tax Claims, Allowed Other Priority Claims, Allowed Secured Claims and the Class 4 Distribution Pool, the Releasees, on the Effective Date, shall be deemed released by the Debtor and the Debtor's estate from any and all Claims, obligations, suits, damages, causes of action, remedies and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that the Debtor or its estate would have been legally entitled to assert in its own right or on behalf of the holder of any Claim or Interest or other person or entity, based in whole or in part upon any act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date.

### 13.3    Injunction.

*Except as otherwise provided herein, from and after the Effective Date, all holders of Claims or Interests shall be permanently enjoined from commencing or continuing in any manner, any suit, action or other proceeding, on account of or respecting any Claim, Interest, obligation, debt, right, cause of action, remedy or liability or any other claim or cause of action released or to be released pursuant hereto.*

### 13.4    Exculpation and Limitation of Liability.

(a)    Neither the Debtor nor the Creditors' Committee, nor any of their respective present or former members, officers, directors, employees, advisors or attorneys shall have or incur any liability to any holder of a Claim or an Interest, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to or arising out of this chapter 11 case, formulating, negotiating or implementing the Plan, the solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the confirmation of the Plan, the consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan (including the distributions), except for their gross negligence or willful misconduct, and in all respects shall be entitled to reasonably rely upon the advise of counsel with respect to their duties and responsibilities under the Plan.

(b)    The foregoing exculpation and limitation on liability shall not, however, limit, abridge or otherwise affect the rights, if any, of the Debtor to enforce, sue on, settle or compromise the claims retained pursuant to Article 12 of this Plan.

## ARTICLE XIV

## RETENTION OF JURISDICTION

14.1    Until entry of the final decree closing the Debtor's bankruptcy case pursuant to Bankruptcy Rule 3022, the Bankruptcy Court shall retain subject matter jurisdiction of this case and all proceedings arising therein or related thereto.  Without in any manner

limiting the scope of the foregoing, the Bankruptcy Court shall retain jurisdiction for the

following purposes:

(a)   finally determine the classification, priority, allowance, disallowance, amount or objection to any Claim, including, without limitation, any Administrative Claim, or to estimate the Allowed amount of any Claim pursuant to section 502(c) of the Bankruptcy Code;

(b)   determine all matters relating to the estate assets, including, but not limited to, the Net Proceeds, the Remaining Net Proceeds and the Class 4 Distribution Pool, and the distribution thereof;

(c)   issue such orders as may be necessary for the implementation, execution, and consummation of this Plan, including orders to ensure the conformity with the terms and conditions of this Plan and other orders of the Bankruptcy Court, notwithstanding any otherwise applicable non-bankruptcy law;

(d)   determine any and all applications for allowance of compensation and expense reimbursement for periods on or before the Consummation Date and to determine any other request for payment of Administrative Claims;

(e)   determine all matters which may be pending before the Bankruptcy Court on or before the Effective Date;

(f)   resolve any cases, controversies, suits or disputes that may arise in connection with the Consummation, interpretation or enforcement of the Plan or any person's or entity's obligations incurred in connection with the Plan that arises at any time before this case is closed, including determination, to the extent a dispute arises, of the entities entitled to a distribution within any particular Class of Claims and of the scope and nature of any obligations to cure defaults under assumed contracts and leases, if any;

(g)   issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any person or entity with Consummation or enforcement of the Plan, except as otherwise provided herein;

(h)   determine any and all applications pending on the Confirmation Date for the rejection, assumption or assignment of executory contracts or unexpired leases and the allowance of any Claims resulting therefrom;

(i)   determine all applications, adversary proceedings, contested matters and other litigated matters which were brought or which could have been brought on or before the Effective Date;

(j)   determine all matters relating to any Asset sale;

(k)      ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions hereof;

(l)      enter such orders as may be necessary or appropriate to implement or consummate the provisions hereof and all contracts, instruments, releases and other agreements or documents created in connection with the Plan;

(m)     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(n)      determine such other matters and for such other purposes as may be provided in, or that may arise in connection with or relate to, this Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with the Plan or the Disclosure Statement;

(o)      modify this Plan or to remedy any apparent non-material defect or omission in this Plan, or to reconcile any non-material inconsistency in this Plan so as to carry out its intent and purposes; and

(p)      enter an order and/or final decree concluding this chapter 11 case.

## ARTICLE XV

## MISCELLANEOUS PROVISIONS

### 15.1   Professional Fee Claims.

All final requests for compensation or reimbursement of professional fees pursuant to sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code for services rendered prior to the Effective Date and substantial contribution claims under section 503(b)(4) of the Bankruptcy Code must be filed and served on the Debtor and its counsel no later than thirty (30) days after the Effective Date, unless otherwise ordered by the Bankruptcy Court. Objections to applications of such professionals or other entities for compensation or reimbursement of expenses must be filed and served on the Debtor and its counsel and the requesting professional or other entity no later than thirty (30) days (or such longer period as may be allowed by order of the Bankruptcy Court) after the date on which the applicable application for compensation or

reimbursement was served.   Aggregate fees and expenses for professionals retained by the Creditors' Committee and the Post-Confirmation Creditors' Committee shall not exceed $100,000 without the prior written consent of Krispy Kreme, which shall not be unreasonably withheld, provided that neither Krispy Kreme nor the Debtor defaults on its obligations under this Plan.

### 15.2   Administrative Claims Bar Date.

All requests for allowance and/or payment of an Administrative Claim must be filed with the Bankruptcy Court and served on counsel for the Debtor, no later than thirty (30) days after the Effective Date.   Unless such request is objected to within seventy-five (75) business days after the Effective Date, such Administrative Claim shall be deemed Allowed in the amount requested.   In the event that an Administrative Claim is objected to and cannot be resolved by the parties, the Bankruptcy Court shall determine the Allowed amount of such Administrative Claim. Notwithstanding the foregoing, no request for allowance and/or payment of an Administrative Claim need be filed with respect to an Administrative Claim that is paid or payable by the Debtor in the ordinary course of business.

### 15.3   Payment of Statutory Fees.

All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation hearing, shall be paid on or before the Effective Date and shall thereafter be paid by the Debtor until this chapter 11 case is closed.

### 15.4   Conflicts.

To the extent that any provision of the Disclosure Statement (or any exhibits, schedules, appendices, supplements or amendments to the foregoing) conflict with or are in any way inconsistent with the terms of the Plan, the Plan shall govern and control.

[60342-0001/CH061070.068]                            25

**15.5    Successors and Assigns.**

The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

**15.6    Compromises and Settlements After Confirmation.**

After Confirmation, but prior to the Effective Date, pursuant to Bankruptcy Rule 9019(a), the Debtor (with Bankruptcy Court approval, following appropriate notice and opportunity for a hearing) may compromise and settle various Claims against it and/or claims that it may have against other persons or entities.

**15.7    Releases and Satisfaction of Subordination and Other Rights.**

All Claims against the Debtor and all rights and Claims between or among holders of such Claims relating in any manner whatsoever to any claimed lien rights, subordination rights or rights to assert Claims that are owned by the Debtor or its estates against any third party, shall be deemed satisfied by the distributions made during this chapter 11 case and distributions under, described in, contemplated by and/or implemented in this Plan. Distributions under, described in, contemplated by and/or implemented by this Plan to the various Classes of Claims hereunder shall not be subject to levy, garnishment, attachment or like legal process by any holder of a Claim, by reason of any claimed lien or subordination rights or otherwise, so that each holder of a Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan.

**15.8    Binding Effect.**

The Plan shall be binding upon and inure to the benefit of the Debtor, all present and former holders of Claims against and Interests in the Debtor, its respective successors and assigns.

[60342-0001/CH061070.068]                               26

### 15.9    Post-Confirmation Creditors' Committee.

On the Effective Date, the Creditors' Committee shall be reconstituted as the Post-Confirmation Creditors' Committee.  Except as otherwise set forth herein, the Post-Confirmation Creditors' Committee shall have authority to exercise those powers and perform those duties specified in section 1103 of the Bankruptcy Code and shall perform such other duties as it may have been assigned by the Bankruptcy Court prior to the Effective Date.  Upon the date that all holders of Allowed Class 4 Claims have received all distributions under this Plan, the Post-Confirmation Creditors' Committee shall be dissolved and its members shall be deemed released of all their duties, responsibilities and obligations in connection with this chapter 11 case and the Plan and its implementation, and the retention or employment of the Post-Confirmation Creditors' Committee's attorneys, accountants and other agents or professionals shall terminate.  The budget for fees and expenses for professionals retained by the Post-Confirmation Creditors' Committee shall be governed by Section 15.1 herein.

### 15.10    Term of Injunction or Stays.

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in this chapter 11 case under sections 105 or 362 of the Bankruptcy Code or otherwise, and extant on the Confirmation Date (excluding any injunctions or stays contained in this Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date.

### ARTICLE XVI

### DEFINITIONS

A term used but not defined in this Plan shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules.